UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICKIE STORM,<br><br>                Plaintiff,<br><br>vs.<br><br>PARMA POLICE OFFICER<br>J. DAILY (#410),<br><br>                Defendant. | Case No. 1:18-cv-00163-DCN<br><br>**SUCCESSIVE REVIEW ORDER** |

Earlier in this matter, the Court ordered Plaintiff Rickie Storm to file an amended complaint to remedy deficiencies in his original Complaint. Dkts. 10, 3. Plaintiff has filed a proposed Amended Complaint, which is subject to review by the Court to determine whether it should be dismissed under 28 U.S.C. §§ 1915 or 1915A. Dkt. 13. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**REVIEW OF COMPLAINT**

Plaintiff alleges that Officer J. Daily of the Parma City Police Department violated his Fourth Amendment rights by carrying out various traffic stops, searches, seizures, and interrogations without reasonable suspicion. At the time of these incidents, Plaintiff was on parole. As the result of one of these stops, Officer Daily found methamphetamine on Plaintiff's person. Plaintiff was arrested and charged with a parole violation; his parole was revoked; and he was returned to prison.

SUCCESSIVE REVIEW ORDER - 1

1. **Screening Requirement**

The Court is required to review complaints filed in forma pauperis, or complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

2. **Fourth Amendment Standard**

    A. *Vehicle Stops*

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. U.S. Const. amend. IV. This protection extends to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). A passenger in a car stopped by the police is considered "seized" in the same sense as the driver and may assert a Fourth Amendment claim for a wrongful seizure. *Brendlin v. California*, 551 U.S. 249, 257-58 (2007).

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Brief investigatory stops do not violate the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *Arvizu*, 534 U.S. at 273 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Reasonable suspicion means a "minimum level of objective justification." *Sokolow*, 490 U.S. at 7. Reasonable suspicion does not need to rise to "the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274. To determine whether reasonable suspicion existed, the court considers "totality of the circumstances surrounding the stop." *United States v. Hall,* 974 F.2d 1201, 1204 (9th Cir. 1992).

"Reasonable suspicion 'is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Thompson,* 282 F.3d 673, 678 (9th Cir. 2002) (quoting *United States v. Rojas–Millan,* 234 F.3d 464, 468–69 (9th Cir. 2000)). The determination is made with reference to the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers." *Hall,* 974 F.2d at 1204 (quoting *United States v. Sharpe,* 470 U.S. 675, 682 (1985)). Officers must be permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273.

An investigatory stop based on reasonable suspicion satisfies the Constitution even if that reasonable suspicion is based on an officer's good-faith mistake of fact. *United States v. Miguel*, 368 F.3d 1150, 1153-54 (9th Cir. 2004). Further, the Supreme Court has held that even an officer's reasonable mistake of the law supports the view that a stop was reasonable. *Heien v. North Carolina*, 135 S.Ct. 530 (2014) (traffic stop deemed reasonable where officer mistakenly believed one burned-out tail light was contrary to law, but the

code stated only that a car be "equipped with *a* stop lamp," which the vehicle had) (emphasis added)).

In *United States v. Miles*, 247 F.3d 1009 (9th Cir. 2001), the United States Court of Appeals for the Ninth Circuit outlined what is permitted in a traffic stop and why:

> It is well-settled that "[t]he purpose of a *Terry* stop is 'to allow the officer to pursue his investigation without fear of violence.'" *United States v. Taylor,* 716 F.2d 701, 708 (9th Cir.1983) (quoting *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)). Generally, "[a] *Terry* stop involves no more than a brief stop, interrogation and, under proper circumstances, a brief check for weapons." *United States v. Robertson,* 833 F.2d 777, 780 (9th Cir.1987). If the stop proceeds beyond these limitations, an arrest occurs, which requires probable cause. *Id.* "There has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning." *United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir.1990).

*Id.* at 1012.

In *Whren*, the Supreme Court unanimously rejected the argument "that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." 517 U.S. at 813. Instead, the Court held that a traffic stop is per se reasonable under the Fourth Amendment so long as the police have probable cause that the motorist has violated any portion of the traffic code. *Id.* at 813-15. Thus, the Court upheld the seizure of illegal drugs found by plainclothes officers during a traffic stop, rejecting the defendants' argument that the stop was pretextual because plainclothes officers do not normally stop cars for minor traffic violations. It is clear, then, that pretextual traffic stops are *not* prohibited by the Fourth Amendment. The police officer's "[s]ubjective intentions [whatever they may be] play no role in ordinary, probable-cause

Fourth Amendment analysis." *Id*. at 813. The Court also rejected the argument that the standard should be different where "civil traffic regulations" are concerned. *See id.* at 810-11.

To summarize, "it is now clear that a police officer may stop and search any vehicle so long as the officer is able to articulate any kind of traffic or equipment violation." *See United States v. Choudhry*, 461 F.3d 1097, 1098 (9th Cir. 2006) (holding that a civil parking violation "falls within the scope of the Supreme Court's decision in *Whren*").

### B. Searches of Drivers and Passengers

During a lawful investigatory stop, police officers may lawfully conduct a "frisk" or "pat-down search" of a driver or passenger if the officer reasonably suspects the person is armed and dangerous. *Terry,* 392 U.S. at 23–24.

The first step in a search of a person is the frisk or pat down for weapons. If, during that preliminary search, "an officer feels an item that he recognizes as contraband or evidence, that 'touch' may provide probable cause for the arrest of the person and seizure of the evidence." *Miles*, 247 F.3d at 1013 (relying on *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993). Now armed with probable cause, the police officer is permitted to go to the second step of reaching into the suspect's pocket where the suspicious item is located. *United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000).

On the other hand, if the officer does not touch something in the pocket that raises a reasonable suspicion that it contains a weapon or contraband during the first step (the frisk or pat down), then there is no reasonable suspicion to allow the officer to go further to explore the contents of the pocket. A permissible "touch" during the frisk or pat down

is *not* the equivalent of squeezing, sliding, or otherwise manipulating the contents of a pocket if an officer has determined that the person does not have a weapon. *Miles*, 247 F.3d at 1014-15. Inventorying a person's pockets is permissible only after a party is in custody or has been "arrested," meaning that the circumstances right before the search should have led the party "reasonably to believe that [he] could not freely leave." *Lowe v. United States*, 407 F.2d 1391, 1397 (1969). Therefore, the nature of a reasonable frisk depends on whether the person has reason to believe he cannot leave and is in custody or under arrest—with or without the officer having said so.

### 3. Discussion

Plaintiff alleges that Officer Daily undertook a series of traffic stops and searched his person to harass him. The Court will review each stop and incident under the criteria set forth above.

#### A. September 15, 2016

On September 15, 2016, Parma City Officer Daily pulled over a vehicle Plaintiff was driving for the reason that Plaintiff had just left a known drug house. Plaintiff alleges that he did not know it was a drug house and had never been to Parma before. Plaintiff was issued a misdemeanor citation for driving without privileges.

Neither Plaintiff's intent nor the officer's intent play into the analysis of the traffic stop. Rather, the inquiry is whether Officer Daily stated a cause for the stop based upon a reasonable suspicion under the totality of the circumstances. In his Amended Complaint, Plaintiff clarifies that a friend dropped him off at the "drug house," because another friend had asked him to pick up a car from the "drug house." Dkt. 13.

Upon leaving the "drug house" through an alley, Plaintiff noticed Officer Daily following him with his lights activated. As the Supreme Court of the United States set forth in *Arvizu*, brief investigatory stops do not violate the Fourth Amendment "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." 534 U.S. at 273. Here, Officer Daily suspected criminal activity may have been afoot based on Plaintiff having paid a short visit to a known drug house. That amounts to reasonable suspicion.

During the traffic stop, Daily found that Plaintiff had an expired license and was on parole. Daily pat-searched Plaintiff with his consent and issued him a ticket for driving on an expired license. Plaintiff voluntarily walked to a convenience store and asked the friend who had dropped him off to come back and pick him up.

After Plaintiff's first trip to the "drug house," he returned to Parma several times for reasons he has not stated and had several additional interactions with police officers during his visits. Within a little over a month, Officer Daily found drugs on Plaintiff's person.

### B.     September 19, 2016

On September 19, 2016, a different Parma City officer, "John Doe," pulled over a vehicle in which Plaintiff was a passenger. The reason for the stop was that the driver had left his turn signal on too long. The driver's excuse was that the automatic turn-off mechanism was broken, and so it took a couple of extra seconds for the driver to manually turn it off. This set of facts clearly is within the lawful reasons for a traffic stop, as described above. *See Whren*, 517 U.S. at 810.

The officer questioned the driver about why Plaintiff was asleep in the passenger seat. The officer asked the driver if he needed to call a paramedic to check Plaintiff's blood sugar. Plaintiff asserts that this was a guise to wait for a police dog to arrive 45 minutes later. The dog did not alert on the vehicle, and no citations were issued.

Even if the officer's stated purpose for delaying the vehicle's departure was a guise, Plaintiff still has not causally connected this stop to Officer Daily, and so it has no relevance to an alleged pattern of harassment by Officer Daily. Because there *was* a mechanical malfunction that created a circumstance that fits within the boundaries of lawful traffic stops, Plaintiff does not have a cause of action against Officer John Doe, who stopped the car. This claim is subject to dismissal.

### C. *September 21 or 22, 2016*

On September 21 or 22, 2016, Officer Daily pulled over a vehicle in which Plaintiff was a passenger. The reason for the stop was that the car had swerved going around a corner. Plaintiff explains that the driver's knee caught on the steering wheel, causing it to swerve, but, he says, the driver otherwise was following all traffic laws. Nevertheless, swerving provides a basis for reasonable suspicion under the law. *See Whren*, 517 U.S. at 810.

Officer Daily allegedly performed field sobriety testing and five breathalyzer tests on the driver, which were all negative. Nevertheless, Plaintiff alleges, Daily told the driver and passenger that they would need to leave their car on the side of the road and walk to their destination, because the driver appeared too dehydrated to drive the car. Plaintiff

alleges that Officer Daily had no legal authority to tell the driver he could not operate a vehicle when he had passed all the sobriety tests.

These facts do not state a cause of action. Plaintiff did not have a constitutional right to be driven somewhere by a driver who was swerving and found to be dehydrated to the extent that his ability to drive may have been impaired. If anyone could assert such a claim against the officer, it would be the driver. This claim will be dismissed.

### D. September 24, 2016

On September 24, 2016, Officer Daily again pulled over a car in which Plaintiff was a passenger. The temporary registration on the vehicle was expired. This provides a reasonable basis for stopping the car. *See Whren*, 517 U.S. at 810.

Daily knew Plaintiff from their prior contacts. Plaintiff tried to leave the scene to go shopping at a grocery store near where they were pulled over, but Daily asked him not to leave. Daily said he needed to talk to Plaintiff about some checks.

Plaintiff alleges that it was obvious Daily was not concerned for his safety and should not have pat searched him. However, it is not necessarily relevant that Daily allegedly knew, from past stops, that Plaintiff did not regularly carry weapons. A police officer is free to perform a pat search whenever a car is stopped to ensure the safety of the officer and the public.

Plaintiff alleges that Daily violated his rights by not just pat searching him, but by putting his hands into Plaintiff's pockets. Daily pulled everything out of Plaintiff's pockets. He placed the items on the back of the car and put Plaintiff in restraints. Daily put Plaintiff in the back seat of the patrol car. Daily spoke to another officer, and then began to drive

away with Plaintiff's items still sitting on the trunk of the car. Plaintiff told Daily to stop and retrieve the items, which Daily did, but Plaintiff's cell phone had broken in the fall.

The question with this particular search is whether Daily had been authorized by Plaintiff's parole officer to search Plaintiff's pockets. Plaintiff's parole agreement, paragraph 8, provides that "Parolee will submit to a search of person or property, to include residence and vehicle, at any time and place by any agent of Field and Community Services and s/he does waive constitutional right to be free from such searching." Dkt. 13-1, p.7.

It does not appear that Officer Daily was a Field and Community Services parole officer, but he may have been acting as an agent of one. In *State v. Armstrong*, 347 P.3d 1025 (Ct. App. 2015), the Idaho Court of Appeals explained:

> [I]f a parole or probation officer is justified in making a search, he or she may enlist the aid of police officers in performing that duty. *State v. Peters*, 130 Idaho 960, 962, 950 P.2d 1299, 1301 (Ct.App. 1997); *State v. Pinson*, 104 Idaho 227, 233, 657 P.2d 1095, 1101 (Ct.App. 1983). Nothing precludes mutually beneficial cooperation between law enforcement officials and parole officers, including law enforcement assistance with a parole officer's request to perform a parole search. *State v. Cruz*, 144 Idaho 906, 910, 174 P.3d 876, 880 (Ct.App. 2007).

*Id*. at 1031.

Therefore, if Officer Daily was acting on behalf of Plaintiff's parole officer, Plaintiff's waiver of his right to be searched would prevent him from maintaining a cause of action against Officer Daily. However, if Daily was acting on his own, his search may not have been justified. Because Plaintiff does not have access to this information, the Court will order Defendant to file a *Martinez* report that provides information about

whether Daily was acting at the behest and under the authority of Plaintiff's parole officer or provides an explanation of the basis Daily had for thrusting his hands into Plaintiff's pockets. If Daily was acting on behalf of Plaintiff's parole officer, Plaintiff has no cause of action against Daily.

In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the trial court could not understand the plaintiff's allegations and ordered that, before answering the complaint, prison officials conduct an investigation of the incident to include an interrogation of those concerned, and file a report with the court, to enable the court to decide the jurisdictional issues and make a determination about whether the plaintiff should be permitted to proceed under section 1915(a). *Id*. at 319. The Ninth Circuit approved the use of *Martinez* reports in *In re Arizona*, 528 F.3d 652, 659 (9th Cir. 2008).

The *Martinez* report shall be filed within **90 days** after service of process; no answer shall be due until further order of the Court. All relevant exhibits addressing these issues should be attached to the report. Thereafter, the Court will issue a successive review order determining whether Plaintiff will be permitted to proceed.

As to Plaintiff's broken cell phone, when a government official negligently damages someone's personal property, the governmental entity has a procedure for seeking compensation. Loss of personal property is not an issue of constitutional dimension. The United States Supreme Court has made it clear that the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Moreover, even the intentional destruction of personal property by prison officials will not support a due

process claim under § 1983 if the prisoner has an adequate remedy under state law. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels*, 474 U.S. at 330-31 (1986). Plaintiff has not alleged that he had no remedy against Parma City for damage to his phone, for example, that he cannot file a written request for reimbursement or sue Daily or Parma City for negligent destruction of property in state court.

After Daily retrieved Plaintiff's personal property from the ground, he drove Plaintiff to the police station, took off Plaintiff's restraints, and questioned him about checks Plaintiff had passed at local businesses. Plaintiff "advised Daily the problem would or could be resolved that day." Dkt. 3, p. 7. Daily told Plaintiff he was free to leave, but, nevertheless, Daily began to search Plaintiff's property again, looking through his money. At that time, a package of methamphetamine dropped onto the floor. Daily determined it was an illegal drug and arrested Plaintiff. In this action, Plaintiff asserts that Daily had no basis to search his personal property a second time. Plaintiff alleges that there was no probable cause for this second search, and the search violated his rights to be free from an unreasonable search.

Plaintiff did not make it clear in the Amended Complaint whether he was found guilty of a parole violation regarding the methamphetamine found on his person by Officer Daily. Plaintiff will have to clarify that in his response to the *Martinez* report. If he was found guilty of possessing illegal drugs, and that charge arose from Daily's allegedly illegal search, then Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The *Heck* rule prevents a person from bringing a civil rights action that would imply that a

parole revocation was invalid, even if the civil action does not directly challenge the revocation—unless the decision to revoke parole has been reversed, expunged, set aside, or otherwise called into question. *Cf. Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1996) (*Heck* applies to parole denial); *see Jackson v. Vannoy,* 49 F.3d 175, 177 (5th Cir. 1995) ("In addition to convictions and sentences, *Heck* applies to proceedings which call into question the fact or duration of parole"). *Heck* bars a civil action even if a plaintiff "seeks money damages rather than parole as a remedy" because "in substance his damages may only be measured by that confinement." *Butterfield*, 120 F.3d at 1025.[1]

## CONCLUSION

Plaintiff may not proceed on claims arising from September 15, 19, or 20/21, 2016, or his claim for personal property damage, because he has failed to state a federal claim upon which relief can be granted. There remains a question whether Plaintiff can proceed on his Fourth Amendment claims arising from one or both pat searches that occurred on September 24, 2016. If service of process of the Amended Complaint and this Order can be accomplished as to Defendant Daily, he will be required to submit a *Martinez* report or other responsive document.

## ORDER

**IT IS ORDERED:**

1. The Clerk of Court shall provide the U.S. Marshal Service with a copy of the

---

[1] Plaintiff must file a petition for writ of habeas corpus rather than a civil rights complaint to challenge an alleged wrongful parole revocation, *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), but cannot do so until he exhausts state judicial remedies. *Granberry v. Greer*, 481 U.S. 129, 134 (1987).

Amended Complaint (Dkt. 13), an issued summons for Officer J. Daily, a copy of this Order, a copy of the Order for In Forma Pauperis Status and Payment of Filing Fee from Inmate Account (Dkt. 9), and a completed U.S. Marshal's standard form for request of service of process, to accomplish personal service of process upon Officer J. Daily of the Parma City Police Department, at address 104 North Fourth Street, Parma, Idaho 83660.

2. Counsel for Defendant is requested to make a limited appearance for the purpose of providing a *Martinez* report, supported by any relevant records address the issues set forth above. The *Martinez* report should be filed within **90 days** after entry of this Order. **No Answer shall be due under the Summons if Defendant files a timely *Martinez* report and until the Court issues an order determining whether Plaintiff can proceed on any claims**. If Defendant prefers to file an answer or motion to dismiss rather than a *Martinez* report within the **90-day** deadline for response, he may do so.

3. The *Martinez* report does not need to be in any particular format, but counsel can present the report in any organized manner that makes sense in response to the allegations of the Complaint and this Order. Exhibits that implicate privacy or security concerns may be filed under seal or in camera, as may be appropriate. Exhibits filed in camera must be accompanied by a privilege or security log that is provided to Plaintiff.

4. Plaintiff may file a response of no more than ten pages to the *Martinez* report within **28 days** after the report is filed. If Defendant files an answer, Plaintiff

shall file nothing further until the Court issues a disclosure and discovery order. If Defendant files a motion to dismiss, Plaintiff's response shall be due within **28 days**.

5. Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. The Court will reconsider appointment after it reviews Plaintiff's amended complaint and Defendant's *Martinez* report.

6. Plaintiff's Motion to Amend (Dkt. 12) and Motion for Extension of Time to Amend (Dkt. 11) are GRANTED to the extent set forth herein above. The Amended Complaint (Dkt. 13) is considered timely.

DATED: October 29, 2019

David C. Nye
Chief U.S. District Court Judge